IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARCIA EPLEY**, *et al.*, | Case No. 3:24-cv-20-SI |
| Plaintiffs, | **ORDER** |
| v. | |
| **OREGON HEALTH AND SCIENCE UNIVERSITY**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

Marcia Epley, Victoria Danilevskiy, Clayton Buerkle, Iona Creanga, Karyn Marks, and Loran Seislove have sued Oregon Health and Science University ("OHSU"). In Plaintiffs' First Amended Complaint ("FAC"),[1] which is the operative Complaint, Plaintiffs allege that they were employed by OHSU and that OHSU terminated their employment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. Plaintiffs contend that OHSU terminated their employment after they refused to comply with OHSU's COVID-19 vaccine mandate. According to Plaintiffs, OHSU's COVID-19 vaccine mandate conflicted with their sincerely held religious

---

[1] Originally, only Epley sued OHSU. In the FAC, Epley added the other Plaintiffs.

PAGE 1 – ORDER

beliefs. OHSU has moved to dismiss all claims asserted by Danilevskiy, Buerkle, Creanga, Marks, and Seislove, arguing that these Plaintiffs failed to exhaust their administrative remedies before filing suit or failed to file suit within the applicable statute of limitations period. OHSU also has moved to dismiss the theories of liability asserted by all Plaintiffs that allege disparate treatment, disparate impact, retaliation, hostile work environment, and "company-wide, or systemic, discriminatory pattern or practice" discrimination (collectively, the "New Claims"). OHSU argues that these New Claims were not encompassed in any Plaintiff's charge of discrimination filed with the Oregon Bureau of Labor and Industries ("BOLI"). OHSU also contends that Plaintiffs have failed to allege facts sufficient to state these claims.[2] The only claim that OHSU has not moved against is Epley's claim alleging unlawful employment discrimination in violation of Title VII by failing to accommodate Epley's religious beliefs.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations

---

[2] Notwithstanding OHSU's request for oral argument, the Court does not believe that oral argument would assist in resolving the pending motion. See LR 7-1(d)(1).

of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**REGULATORY BACKGROUND**

On August 13, 2021, amid the surge in COVID-19 cases, the Governor of Oregon issued Executive Order 21-29 (the "EO"). In the EO, the Governor explained that the 2021 summer surge in COVID-19 infections "is imperiling the state health system's ability to manage not just COVID-19 patients, but also those who require specialized medical care after car accidents, heart attacks, and other medical emergencies" and that "employer vaccination requirements have become an important tool" for managing the surge. The EO required that state executive-branch employees be "fully vaccinated" against COVID-19 by the later of October 18, 2021, or six weeks after the date that the Food and Drug Administration ("FDA") approves a COVID-19

PAGE 3 – ORDER

vaccine. The EO allowed for exceptions for individuals unable to be vaccinated due to disability, a qualifying medical condition, or a sincerely held religious belief.

After the FDA approved the COVID-19 vaccine on August 23, 2021, the Oregon Health Authority ("OHA") adopted similar vaccination rules. One of those rules, then-codified at Oregon Administrative Rule ("OAR") 333-019-1010, is known as the "Healthcare Order."[3] Originally adopted on August 25, 2021, and then modified on September 1, 2021, the Healthcare Order explained, in relevant part:

> Healthcare providers and healthcare staff have contact with multiple patients over the course of a typical day and week, including providers that provide care for people in their homes. Individuals cared for in these settings are more likely than the general public to have conditions that put them at risk for complications due to COVID-19. COVID-19 variants are running through the state's unvaccinated population and causing an increase in breakthrough cases for those who are fully vaccinated. This rule is necessary to help control COVID-19, protect patients, and to protect the state's healthcare workforce.

OAR 333-019-1010(1) (effective Sept. 1, 2021). Based on these concerns, the Healthcare Order provided that after October 18, 2021, "A health care provider or healthcare staff person may not work, learn, study, assist, observe, or volunteer in a healthcare setting unless they are fully vaccinated or have provided documentation of a medical or religious exception." OAR 333-019-1010(3)(a) (Sept. 1, 2021).[4]

---

[3] The OHA suspended OAR 333-019-1010 in mid-2023 and repealed it effective June 30, 2023.

[4] The Healthcare Order defined "healthcare providers and healthcare staff" as:

> [I]ndividuals, paid and unpaid, working, learning, studying, assisting, observing or volunteering in a healthcare setting providing direct patient or resident care or who have the potential for direct or indirect exposure to patients, residents, or infectious materials, and includes but is not limited to any individual licensed by a health regulatory board as that is defined in ORS 676.160,

PAGE 4 – ORDER

In late 2021, the United States Secretary of Health and Human Services (the "Secretary"), who administers the Medicare and Medicaid programs, issued an interim final rule amending the conditions of participation in Medicare and Medicaid to add a new requirement—that facilities ensure that their covered staff are vaccinated against COVID-19. Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555, 61616-27 (Nov. 5, 2021). The rule required providers to offer medical and religious exemptions and did not cover staff who teleworked full-time. *Id.* at 61572. The rule further provided that a facility's failure to comply with the vaccination requirement may lead to monetary penalties, denial of payment for new admissions, and ultimately termination of participation in the programs. *Id.*

---

> unlicensed caregivers, and any clerical, dietary, environmental services, laundry, security, engineering and facilities management, administrative, billing, student and volunteer personnel.

OAR 333-019-1010(2)(d)(A) (Sept. 1, 2021). The Healthcare Order defined "healthcare setting" as:

> [A]ny place where health care, including physical or behavioral health care[,] is delivered and includes, but is not limited to any health care facility or agency licensed under ORS chapter 441 or 443, such as hospitals, ambulatory surgical centers, birthing centers, special inpatient care facilities, long-term acute care facilities, inpatient rehabilitation facilities, inpatient hospice facilities, nursing facilities, assisted living facilities, residential facilities, residential behavioral health facilities, adult foster homes, group homes, pharmacies, hospice, vehicles or temporary sites where health care is delivered (for example, mobile clinics, *ambulances*), and outpatient facilities, such as dialysis centers, health care provider offices, behavioral health care offices, urgent care centers, counseling offices, offices that provide complementary and alternative medicine such as acupuncture, homeopathy, naturopathy, chiropractic and osteopathic medicine, and other specialty centers.

OAR 333-019-1010(2)(e)(A) (Sept. 1, 2021) (emphasis added).

PAGE 5 – ORDER

at 61574. As explained by the Supreme Court, "[t]he Secretary issued the rule after finding that vaccination of healthcare workers against COVID-19 was 'necessary for the health and safety of individuals to whom care and services are furnished.'" *Biden v. Missouri*, 595 U.S. 87, 91 (2022) (quoting 86 Fed. Reg. at 61561). The Supreme Court upheld the Secretary's rule as within the Secretary's authority provided by Congress. *Id.* at 93. The Supreme Court added:

> COVID-19 is a highly contagious, dangerous, and—especially for Medicare and Medicaid patients—deadly disease. The Secretary of Health and Human Services determined that a COVID-19 vaccine mandate will substantially reduce the likelihood that healthcare workers will contract the virus and transmit it to their patients. 86 Fed. Reg. 61557-61558. He accordingly concluded that a vaccine mandate is "necessary to promote and protect patient health and safety" in the face of the ongoing pandemic. *Id.*, at 61613.

*Id.* In mid-2023, the Secretary issued a new rule withdrawing the vaccination requirement. Policy and Regulatory Changes to the Omnibus COVID-19 Health Care Staff Vaccination Requirements, 88 Fed. Reg. 36485, 36488 (June 5, 2023) (effective Aug. 4, 2023).

## FACTUAL BACKGROUND

In their FAC, Plaintiffs allege that each worked for OHSU. FAC ¶ 4. Epley worked *remotely* as a coder for more than five years and has never been to OHSU's campus or facilities. *Id.* ¶ 6. Danilevskiy worked as an electroencephalogram ("EEG") technologist, performing ultrasounds and MRIs, for about 20 years. *Id.* ¶ 12. Buerkle worked as an administrative assistant for almost 20 years. *Id.* ¶ 15. Creanga worked as pediatric registered nurse for about 19 years, working on the medical surgical floor for the first five years and then moving to the pediatric float pool, where she worked in pediatric intensive care, neonatal intensive care, pediatrics recovery unit, pediatric oncology, pediatrics surgery, pediatric neurosurgery, and the medical pediatric unit. *Id.* ¶ 18. Marks worked as a patient access services representative and an

international childbirth educator for more than 20 years. *Id.* ¶ 22. Seislove worked as a registered nurse in the post-anesthesia care unit for more than five years. *Id.* ¶ 25.

Plaintiffs assert that each were "exceptional employees, and each maintained the strictest adherence to the safety standards employed by the Defendant during the pandemic to alleviate or eliminate the risk of infection, including the wearing of personal protective equipment (PPE), regular handwashing, social distancing, regular testing, and quarantining when necessary." *Id.* ¶ 4. In the summer of 2021, OHSU announced that it would be implementing and enforcing a COVID-19 vaccine mandate in the workplace. *Id*. OHSU informed its employees that individuals who had religious beliefs that conflicted with taking the vaccine could apply for a religious exception. *Id*. Each Plaintiff alleges that they have sincerely held religious beliefs and submitted applications for religious exemptions. *Id.* ¶¶ 7-8 (Epley), ¶ 13 (Danilevskiy), ¶ 16 (Buerkle), ¶ 19 (Creanga), ¶ 23 (Marks), ¶ 26 (Seislove). OHSU ultimately denied all Plaintiffs' exemption requests and terminated Plaintiffs' employment. *Id.* ¶ 9 (Epley), ¶ 13 (Danilevskiy), ¶ 16 (Buerkle), ¶ 19 (Creanga), ¶ 23 (Marks), ¶ 26 (Seislove).

On August 10, 2022, Epley filed an administrative complaint with BOLI and requested that BOLI cross-file her complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"). ECF 11-1 at 1-6.[5] She received a right-to-sue letter from BOLI on October 5, 2023. *Id.* at 13. On August 16, 2022, Buerkle submitted two charges with BOLI, which included identical substantive allegations, and requested that BOLI cross-file his complaints with the

---

[5] OHSU argues that the Court may take judicial notice of Plaintiffs' BOLI complaints and the related right-to-sue letters because their existence and contents are not subject to reasonable dispute. *See* Fed. R. Evid. 201(b). Plaintiffs have not opposed OHSU's request. These documents are all matters of public record, and their accuracy is not reasonably subject to debate. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (granting judicial notice for "undisputed matters of public record" (emphasis omitted)). Accordingly, the Court grants OHSU's request.

PAGE 7 – ORDER

EEOC. ECF 11-2 at 1-5, 7-11. Buerkle received a right-to-sue letter from BOLI on February 15, 2023, and a second right-to-sue letter from BOLI on May 22, 2023. *Id.* at 6, 12. On August 18, 2022, Creanga filed her charge with BOLI and requested that BOLI cross-file her complaint with the EEOC. ECF 11-3 at 1-6. She received a right-to-sue letter on February 15, 2023. *Id.* at 7. On August 15, 2022, Seislove filed her charge with BOLI and requested that BOLI cross-file her complaint with the EEOC. ECF 11-4 at 1-5. She received a right-to-sue letter on February 13, 2023. *Id.* at 6. Danilevskiy and Marks did not file charges with BOLI or the EEOC.

## DISCUSSION

### A. Failure to Exhaust Administrative Remedies and Timely File

Before bringing a lawsuit under Title VII, a claimant must first exhaust administrative remedies by timely filing an administrative charge with the appropriate government agency and receiving a right-to-sue letter. *See* 42 U.S.C §§ 2000e-5(e)-(f). If the agency dismisses the charge, a claimant has 90 days to file a civil action. *See id.* § 2000e-5(f)(1); *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997). "This ninety-day period is a statute of limitations. Therefore, if a claimant fails to file the civil action within the ninety-day period, the action is barred." *Nelmida*, 112 F.3d at 383 (citation omitted).

OHSU argues that all Plaintiffs except for Epley failed to exhaust administrative remedies or timely file a civil action. Plaintiffs do not dispute that Plaintiffs other than Epley failed to file BOLI or EEOC charges or otherwise failed to file suit within 90 days after receiving a right-to-sue letter. Instead, Plaintiffs argue that the "piggyback, or single-filing, rule" allows them to join Epley's timely EEOC complaint and civil lawsuit.

The "piggyback, or single-filing, rule" is "a judicially created equitable tolling rule 'based on the observation that it would be duplicative and wasteful for complainants with similar grievances to have to file identical notices of intent to sue with a governmental agency.'"

*Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1202 (9th Cir. 2016) (quoting *Harris v. County of Orange*, 682 F.3d 1126, 1136 (9th Cir. 2012)). Although this rule originated in the context of class and collective actions, some district courts in this circuit have held that "if the would-be intervenor's claim arises out of the same or similar discriminatory conduct, committed in the same period, as the claim in the suit in which [the intervenor] wants to intervene, [the intervenor's] failure to file a timely charge will be disregarded." *Martinez v. Victoria Partners*, 2014 WL 1268705, at *4 (D. Nev. Mar. 27, 2014) (alterations in *Martinez*) (quoting *Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003)). For purposes of this analysis, the Court presumes without deciding that the single-filing rule applies outside the class action context.

Buerkle, Creanga, and Seislove each filed charges with BOLI, but did not file a civil lawsuit within 90 days of receiving their right-to-sue letters. "Ninth Circuit courts have consistently refused to apply the piggyback rule where a plaintiff has filed an administrative claim and then failed to file a timely federal suit." *Bowerman v. St. Charles Health Sys., Inc.*, 2024 WL 3276131, at *9 (D. Or. July 1, 2024). As the District of Hawaii explained in a case cited by Plaintiffs:

> Different policy considerations are at issue where a plaintiff has allowed a suit-filing deadline to lapse after obtaining a right-to-sue letter. Allowing such a deadline to lapse would demonstrate dilatoriness or lack of diligence (or waiver); not allowing "piggybacking" would be consistent with the policy behind enforcing statutory deadlines. Once that filing date has passed, he or she might properly be barred for reasons of repose from "piggybacking" on a more diligent plaintiff.

*U.S. EEOC v. NCL Am. Inc.*, 504 F. Supp. 2d 1008, 1013 (D. Haw. 2007); *see also Martinez*, 2014 WL 1268705, at *7 ("[T]he single-filer rule cannot revive claims which are no longer viable at the time of filing." (quotation marks omitted)); *Jewell v. Legacy Health*, 2025

WL 1507214, at *3 (D. Or. May 1, 2025) ("This court joins others in this district that have concluded that the single-filing rule does not apply when a plaintiff files an administrative charge, receives a right-to-sue letter, and then fails to timely commence a civil action."), *report and recommendation adopted*, 2025 WL 1504833 (D. Or. May 27, 2025). The Court follows these cases, and thus dismisses the claims asserted by Buerkle, Creanga, and Seislove.

Regarding the claims brought by Danilevskiy and Marks, both failed to file any administrative charges. Plaintiffs argue that Danilevskiy and Marks may "piggyback" on Epley's charge because the single-filing rule allows "similarly situated" plaintiffs to join an administrative charge filed by another plaintiff. For the single-filing rule to apply, however, Epley's administrative charge must "be sufficient to put [OHSU] on notice that additional people may be subject to the same unlawful employment practices." *Horne*, 816 F.3d at 1203; *see also Paige v. California*, 102 F.3d 1035, 1042-43 & n.9 (9th Cir. 1996) (holding that the representative charge was sufficient to support the piggybacking plaintiffs' claims because the representative charge indicated that other claims "could reasonably be expected to grow out of" the initial allegations).

The Ninth Circuit has not promulgated a single test for the single-filing rule, but other courts have noted that an "appropriate test must serve the purposes of the notice requirement, which are notice and conciliation: notice to the prospective defendants and an opportunity for the EEOC to eradicate the offending practices through conciliation." *Peeples v. City of Detroit*, 891 F.3d 622, 632 (6th Cir. 2018); *see also Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995) (explaining the congressional purpose underlying the charge-filing requirement and concluding that a timely filed "charge will be adequate to support piggybacking under the single filing rule if it contains sufficient information to notify prospective defendants of their potential

liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit i[s] filed"); *Horton*, 343 F.3d at 899-900 (stating that "[t]he conciliation process . . . is important in limiting the Title VII caseload of the federal courts, and there is a risk that the single-filing doctrine will impede it," and finding that the "single-filing doctrine" did not apply even if it "could be thought to embrace some two-complainant cases" (cleaned up)). The Ninth Circuit has similarly explained that notice provides a defendant with "the opportunity to informally mediate and conciliate the dispute . . . before litigation of the grievance commence[s]." *Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 760 (9th Cir. 1979).

Under this standard, Epley's BOLI complaint is not sufficient to satisfy the notice requirement. Her BOLI complaint referenced other OHSU employees only twice: (1) stating that OHSU has more than 500 employees doing business in Oregon, ECF 11-1 at 5, and (2) stating that "[e]mployees such as Ms. Epley were permitted to apply for religious and/or medical exemptions," *id.* at 6. Epley does not allege any broad policies or practices by OHSU, but asserts only that OHSU's "unlawful behavior including rejecting Ms. Epley's request for a religious exemption." *Id.* These allegations are insufficient to provide notice. *See Lancaster v. Or. Health & Sci. Univ.*, 2025 WL 2324647, at *17 (D. Or. Jan. 10, 2025) (concluding that similar allegations were "clearly insufficient to serve the purposes of the notice requirement"), *report and recommendation adopted as modified*, 2025 WL 2170750 (D. Or. July 31, 2025).

Plaintiffs Danilevskiy and Marks also assert that they are similarly situated to Epley because "[t]here is a nearly identical nexus of facts; the same Defendant; and nearly identical timelines" in that each was employed by OHSU, had their religious exception requests to the COVID-19 vaccine denied, and were terminated for failure to receive the vaccine. Plaintiffs, however, all held different positions—Epley was a coder who worked *entirely remotely*, while

Danilevskiy was an EEG technologist who performed ultrasound procedures on patients and Marks was a patient access services representative who also worked directly with patients. Further, Plaintiffs allege different beliefs, submitted their exemption requests and were terminated at different times, and allege different claims. These differences show that Epley's BOLI complaint does not allow the claims asserted by Danilevskiy and Marks to satisfy the piggyback, or single-filing, rule. Thus, the Court dismisses the claims brought by Danilevskiy and Marks.

### B. Epley's New Claims

A district court has jurisdiction over only (1) "any charges of discrimination that are like or reasonably related to the allegations made before the EEOC," and (2) "charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (quotation marks omitted). OHSU contends that the New Claims asserted by Epley are not "like or reasonably related" to the allegations in Epley's BOLI charge and that the BOLI charge would not reasonably lead to an investigation into the New Claims. Thus, argues OHSU, the Court should dismiss Epley's New Claims (as well as the New Claim asserted by all other Plaintiff in this action). Plaintiffs did not respond to this argument; instead, they argued only that the New Claims relate back to Epley's original civil Complaint filed in this lawsuit.

A plaintiff who "makes a claim" in a civil complaint "but fails to raise the issue in response to a defendant's motion to dismiss" that claim, "has effectively abandoned [that] claim." *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *see also Maldonado v. City of Ripon*, 2021 WL 2682163, at *8 (E.D. Cal. June 30, 2021) ("Plaintiff does not address Defendants' arguments regarding punitive damages in his opposition to the motion to dismiss and therefore concedes the arguments."); *Kerrigan v. Allstate Ins. Co.*, 543 F. Supp. 3d

843, 845-46 (C.D. Cal. June 10, 2021) ("Plaintiff also did not oppose and, thus, concedes, Defendants' argument that because Allstate Insurance was not a party to the insurance policy at issue in this action it was improperly named and should be dismissed."). Thus, the Court finds that Epley (as well as all other Plaintiffs here) has conceded that the New Claims are not properly before the Court.

## CONCLUSION

The Court GRANTS OHSU's Partial Motion to Dismiss. ECF 10. The Court DISMISSES with prejudice the claims asserted by Plaintiff Danilevskiy, Buerkle, Creanga, Marks, and Seislove. The Court also DISMISSES with prejudice Epley's theories of liability of disparate treatment, disparate impact, retaliation, hostile work environment, and "company-wide, or systemic, discriminatory pattern or practice" discrimination.

**IT IS SO ORDERED**.

DATED this 2nd day of September, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge